Munn v. Barnum.

————————◇————————

## MUNN and others *vs.* BARNUM.

A person selling stock to be delivered at a future day, may recover the price, upon a tender to the purchaser of the certificates of stock, with a power of attorney to transfer the same, and demand and refusal of payment, without an actual transfer of the stock into the name of the purchaser ; where the purchaser, at the time of the tender, makes no objection for want of a transfer, but rejects the stock altogether, and refuses payment on any terms.

APPEAL, by the defendant, from a judgment rendered on a verdict recovered at the circuit. The action was to recover damages for the non-fulfillment of an executory contract by which the defendant agreed to purchase from the plaintiffs 223 shares of stock in a corporation called "The Association for the exhibition of the industry of all nations." The stock was to be delivered within six months from the date of the agreement, which was made April 13, 1854. The defendant having refused to accept, and pay for, the stock, at the expiration of the six months, and after the commencement of this

action, the same was sold at the board of brokers, by consent, and brought the sum of $264.84. By the agreement, the price of the stock was to be $71 per share; but in case any suit should be commenced by any person against the crystal palace association, the price was to be reduced to $66 per share. Such a suit having been commenced, the plaintiffs in this action recovered a verdict for the price of the stock at the latter rate.

*F. B. Cutting*, for the appellant.

*C. O'Conor*, for the respondents.

*By the Court*, ROOSEVELT, J. On the 13th of April, 1854, Barnum, the defendant, agreed to purchase of the plaintiffs, within six months from that date, 223 shares of crystal palace stock, at $71 per share. The stock having subsequently become nearly worthless, Barnum refused to fulfill his engagement. On the trial of the cause, various difficulties were started, which being overruled by the judge, a verdict was rendered against the defendant for $15,234, which he now seeks to set aside.

The principal, and almost the only question, which needs to be particularly noticed, relates to the sufficiency of the tender. Mr. Barnum's residence, it appears, was at Bridgeport, but his place of business the museum in the city of New York. On the last day, accordingly, of the six months, the defendants, who had notified him by letter four days before, called on the defendant at his office in the museum. They found there a Mr. Greenwood, who had charge of the office, and producing the certificates of the stock, tendered them to him. He replied that Mr. Barnum was out of town, but would return on Monday; that he, Greenwood, had no instructions in regard to the matter, and declined to accept or pay for the stock. On the Monday following they called again, and seeing Barnum personally told him they had come to deliver the stock. His reply was, that he had foolishly entered into the agreement, relying on the joint responsibility of other parties, who

had since backed out, (naming Mr. Watts Sherman,) and that consequently (without stating any particular objections) he should decline doing any thing more than the law would compel him to do.

He now says—and it is the only point I deem it necessary specially to consider—that to make a good tender, the plaintiffs "were bound to have transferred and placed the legal title of the stock in the defendant;" but that instead of doing so, they "required him to pay for the same on receiving the simple scrip certificates, with a common power of attorney to transfer, which was in law revocable, (he does not say it was so in terms,) and could at any time have been revoked by the plaintiffs by their own acts, death, or otherwise."

He made no such objection, it will be observed, and suggested no such preliminary, when the stock was offered to him and payment demanded. On the contrary he rejected the stock altogether, and refused payment on any terms. His defense, therefore, now set up is in an afterthought. It has no merits, and its only basis, if any, is purely technical.

Is it, then—for that is the question—an unbending rule of law, that a person selling stock, on a valid contract, can only recover the price by first putting the stock in the name, and of course in the power of the purchaser; and that too, when the purchaser, at the time, expresses no readiness to pay, and no desire for a transfer in that or in any other mode? The answer to such a question is involved, as it seems to me, in the mere statement of it. Suppose the purchaser, after the making of the transfer by the seller on the books of the corporation, should refuse to pay, what would be the seller's remedy? An injunction would no doubt be granted; but of what avail would that remedy be against a second bona fide purchaser, to whom the party, in the interval, might have made a transfer for full value, without notice? On the other side, where was the difficulty in exchanging the papers simultaneously with the payment? The stock was transferable on the books of the company by the holder of the power of attorney; and it was not transferable by the giver of that power after he had parted

---
Munn *v.* Barnum.
---

with the certificate. A " surrender of the certificate" was by it terms indispensable to a transfer of the stock, and such surrender could only be made by the party who had the certificate to surrender. As to a possible revocation of the power by death or otherwise, as suggested in the answer, it was purely imaginary. A power coupled with an interest cannot be so revoked; and when it comes to be executed, the transfer, if necessary, relates back to the date of the authority under which it was made. The answer of the defendant, as already stated, in effect admits, as matter of fact, a tender of the *power and certificate.* Such a tender of stock, in my judgment, is also sufficient in law in any case, but especially in a case like the present. Technical quibbles are not to be encouraged. They are inconsistent with the liberal spirit of modern times and of modern legislation. They are usually unjust, if not fraudulent, afterthoughts, suggested either by the desire of evading duty or of gaining time. " Six, nine and twelve months " (I quote from Barnum's letter of the 10th of November) was the proffered exaction in the present case. The defendant at one period, seems to have viewed them in that light himself. " It was, he wrote, with *sincere regret,* that he felt unexpectedly compelled, in accordance with the advice of his counsel, (his counsel, I imagine, had very little agency in the matter,) to contest the claim." All he wanted was time. Having gained that by the law's delay—having in fact gained more than three-fold what he asked—he would no doubt sincerely regret should he now be the means not only of contesting, but of defeating the plaintiff's claim.

Judgment for the plaintiffs affirmed with costs.

[NEW YORK GENERAL TERM, June 6, 1857. *Roosevelt, Mitchell* and *Davies,* Justices.]